**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Carl E. SMITH, Defendant-Appellant.**

**No. 76–1017.**

United States Court of Appeals, Seventh Circuit.

Argued April 22, 1976.

Decided July 20, 1976.

---

F. Laurence Anderson, Jr., Gary, Ind., for defendant-appellant.

Lauren S. Kahn, T. George Gilinsky, Washington, D.C., Abraham M. Poretz, Crim. Div., Dept. of Justice, Washington, D.C., John R. Wilks, U.S. Atty., Fort Wayne, Ind., for plaintiff-appellee.

Before CUMMINGS and BAUER, Circuit Judges, and JAMESON, Senior District Judge.*

JAMESON, Senior District Judge:

Carl E. Smith has appealed his conviction for perjury before a grand jury, contending that (1) his alleged perjurious statements should have been suppressed because he was not given the warnings called for by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), prior to his grand jury testimony, and (2) the evidence was insufficient to sustain his conviction. We affirm.

---

* The Honorable William J. Jameson, United States Senior District Judge for the District of Montana, is sitting by designation.

## Background

A grand jury was convened to investigate the tax sale of a residence owned by one Fred Mackey. The property was sold by the United States to A & D Realty Company in partial satisfaction of Mackey's tax liability. The thrust of the grand jury inquiry was whether the funds used by A & D Realty came from concealed assets of Mackey with the objective of evading taxes and defrauding the Government.

Smith was called before the grand jury pursuant to a subpoena and was questioned about his financial relationship with Mackey. Smith testified that he had utilized office space in the same building as Mackey and knew him, but that his business dealings with Mackey were limited to a personal loan from Mackey of $800 which was repaid. Smith acknowledged that he was a stockholder in A & D Realty. He stated that he had purchased 125 shares in the corporation with a cashier's check in the amount of $25,000.00. Smith was then questioned in detail about how he had obtained such a large amount. He testified that he had accumulated $25,000.00 in cash over several years and that he had kept this money at his home and at the homes of relatives.

After hearing this testimony and after warning Smith that giving false evidence could result in criminal prosecution,[1] the grand jury indicted Smith for making false statements concerning a matter within the jurisdiction of the Internal Revenue Service, in violation of 18 U.S.C. § 1001, and for committing perjury before a grand jury, in violation of 18 U.S.C. § 1623.

In a jury trial the Government introduced documentary evidence showing that for several years prior to the $25,000.00 investment Smith was in poor financial condition, was heavily indebted, and had paid off some of his debts by taking out new loans with extended pay back periods. The Government also introduced copies of defendant's income tax returns showing that from 1969 through 1974 Smith's adjusted gross income never exceeded $11,616.00. Testifying in his own behalf, Smith stated that the $25,000.00 had come from earnings he had obtained beginning in 1973 from selling stereo equipment and tapes and from winnings at the race track and that none of these earnings had been reported to the Internal Revenue Service. Defendant's mother testified that she had kept money for the defendant at her home but did not know how much money the defendant had left with her. The jury returned a verdict of guilty on the perjury count and not guilty on the count charging a violation of 18 U.S.C. § 1001.

## Motion to Suppress

Prior to the introduction of evidence, but after the jury was sworn, defense counsel moved to suppress the transcript of Smith's testimony before the grand jury. This motion was based upon defendant's claim that his constitutional rights were violated when the Government failed to advise him before testifying in the grand jury proceedings of his "Miranda rights" to counsel and to remain silent. The trial court took the motion under advisement and at the conclusion of the Government's case denied the motion. In contending that the district court erred in denying his motion to suppress, Smith argues that at the time of his grand jury testimony he was a "putative or virtual defendant" and thus entitled to the *Miranda* warnings prior to being questioned by the grand jury.

■ We conclude that Smith was not a "putative or virtual defendant", and in any event no *Miranda* warning was required under the holding in *United States v. Mandujano*, decided by the Supreme Court on May 19, 1976, —— U.S. ——, 96 S.Ct. 1768, 48 L.Ed.2d 212.

It is clear from the testimony of the grand jury foreman at Smith's trial that when Smith appeared before the grand jury the investigation was oriented toward the suspected tax fraud of Fred Mackey. Gen-

---

1. At one point the grand jury foreman asked Smith if he understood what perjury meant in laymen's terminology. Smith responded, "I understand it to be lying under oath".

eral inquiries were being made with respect to how A & D Realty had obtained its funds. When asked, "Was there any indication in your mind [that] there was anything illegal about the source of funds", the foreman answered, "I had formed no opinion". An Internal Revenue agent testified at Smith's trial that before Smith testified before the grand jury there had been no case file opened on Smith linking him to any federal tax violations. No indictment was then contemplated; nor did the prosecutor have information that Smith had acted illegally. Smith was not in our opinion a "putative defendant" when he testified before the grand jury.[2]

In contending that *Miranda* warnings were required, appellant relied primarily on *United States v. Mandujano,* 496 F.2d 1050 (5 Cir. 1974). In *Mandujano* the district court had granted a motion to suppress the defendant's grand jury testimony because he was not given the *Miranda* warnings, holding that the defendant was a "putative" or "virtual" defendant when called before the grand jury and therefore entitled to full *Miranda* warnings.[3] The Court of Appeals affirmed. Subsequent to oral argument in this case, the Supreme Court reversed in *Mandujano,* the Court saying in part, "Assuming, *arguendo,* that respondent, was indeed a 'putative defendant', that fact would have no bearing on the validity of a conviction for testifying falsely." 96 S.Ct. 1780.

The plurality opinion by the Chief Justice, joined by Justices White, Powell and Rehnquist, noted that the *Miranda* "warnings were aimed at the evils seen by the Court as endemic to police interrogation of a person in custody" and that "many official interrogations, such as grand jury questioning, take place in a setting wholly different from custodial police interrogation". 96 S.Ct. 1778. The Court continued in part:

"To extend the concepts of *Miranda,* as contemplated by the Court of Appeals, would require that the witness be told that there was an absolute right to silence, and obviously any such warning would be incorrect, for there is no such right before a grand jury. Under *Miranda,* a person in police custody has, of course, an absolute right to decline to answer any question, incriminating or innocuous, see *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), whereas a grand jury witness, on the contrary, has an absolute duty to answer all questions, subject only to a valid Fifth Amendment claim. And even when the grand jury witness asserts the privilege, questioning need not cease, except as to the particular subject to which the privilege has been addressed. Compare *Michigan v. Mosley, supra,* at 105, 96 S.Ct., at 327, 46 L.Ed.2d, at 322. Other lines of inquiry may properly be pursued."[4] 96 S.Ct. 1778–1779.

In a concurring opinion Mr. Justice Stewart, joined by Mr. Justice Blackmun, said in part:

"The Fifth Amendment privilege against compulsory self-incrimination provides no protection for the commission of perjury. 'Our legal system provides methods for challenging the Government's right to ask questions—lying is not one of them. A citizen may decline to answer the question, or answer it honestly, but he cannot with impunity knowingly and willfully answer with a falsehood.' *Bryson v. United States,* 396 U.S.

---

**2.** In view of the holding in *Mandujano,* it is unnecessary to consider and distinguish those cases in which it was held that a witness before a grand jury was a "virtual" or "putative" defendant.

**3.** In *Mandujano* the witness had been identified as a drug trafficker and was questioned by the grand jury about his involvement in the crime under investigation. He was convicted of perjury in violation of 18 U.S.C. § 1623.

**4.** See also *In re Bonk,* 527 F.2d 120, 124–125 (7 Cir. 1975), where this court recognized that a grand jury witness may refuse to answer questions violating his privilege against self-incrimination unless he is granted immunity, but once immunity is conferred he must testify. The court observed further that "the Fifth Amendment does not protect perjury" before the grand jury.

64, 72, 90 S.Ct. 355, 360, 24 L.Ed.2d 264, 271 (footnote omitted)." 96 S.Ct. 1792.[5]

A similar conclusion was reached by this court in *United States v. DiGiovanni,* 397 F.2d 409, 412 (7 Cir. 1968), where it was stated that "the Government's failure to give Miranda-type warnings to a grand jury witness, even one as to whom the proceedings have become accusatory, does not bar a perjury prosecution for false testimony before the grand jury".[6] In the present case, as in *Mandujano* and *DiGiovanni,* the witness was not prosecuted for criminal activity on the basis of incriminating statements made before the grand jury to which Fifth and Sixth Amendment protections might be said to extend. Instead, the witness was prosecuted for committing perjury in answering the grand jury's questions. The district court properly denied appellant's motion to suppress.

### Sufficiency of the Evidence

▆ In order to obtain a conviction under 18 U.S.C. § 1623, the prosecution must prove that the witness made a "false material declaration". Appellant contends that the evidence used to convict him was insufficient to establish either falsity or materiality. We find no merit in this contention.

▆ The verdict of the jury must, of course, be sustained "if there is substantial evidence, taking the view most favorable to the Government, to support it". *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). Viewed in this light the evidence shows that throughout the period when appellant had supposedly saved $25,000.00 in cash, he was deeply in debt and involved constantly in refinancing in order to remain financially liquid. His annual income of between $9,000 and $12,000, as shown by his tax returns, was used to support a wife and growing family. Even if the jury chose to believe appellant's claim that he earned a total of $13,000 in unreported income from his stereo business in 1973 and 1974, appellant's claim that he was able to set aside $25,000.00 over the past ten to fifteen years is not credible. The jury could reasonably conclude that the $25,000.00 came from some other source. Although no direct evidence of perjury was produced, none was required. Section 1623(e) provides, "It shall not be necessary that such proof be made by any particular number of witnesses or by documentary or other type of evidence."[7] The evidence was sufficient to establish the falsity of appellant's testimony.

Nor can we agree that the evidence was insufficient to establish materiality as a matter of law. As this court has held, false testimony is material for purposes of § 1623 if it "has the natural effect or tendency to impede, influence or dissuade the grand jury from pursuing its investigation". *United States v. DeVitt,* 499 F.2d 135, 139 (7 Cir. 1974), *cert. denied,* 421 U.S. 975, 95 S.Ct. 1974, 44 L.Ed.2d 466 (1975); *United States v. Wesson,* 478 F.2d 1180, 1181 (7 Cir. 1973). Here, appellant's testimony concerned the sources of funds which A & D Realty used to purchase the Mackey residence—a central issue in the grand jury's investigation. Appellant's testimony could have no effect but to impede the investiga-

---

5. A concurring opinion by Mr. Justice Brennan, joined by Mr. Justice Marshall, begins with the statement: "I concur in the result reached by the Court, for 'even when the privilege against self-incrimination permits an individual to refuse to answer questions asked by the Government, if false answers are given the individual may be prosecuted for making false statements.' *Mackey v. United States,* 401 U.S. 667, 705, 91 S.Ct. 1160, 1166, 28 L.Ed.2d 404, 428 (1971). 96 S.Ct. 1780.

6. See also *United States v. Nickels,* 502 F.2d 1173, 1176 (7 Cir. 1974) (cited in *Mandujano*),

where we held that the failure of the Government to inform a witness that he could be prosecuted for lying under oath did not bar a perjury prosecution.

7. Section 1623 was added to Title 18 in Public Law 91–452 (Organized Crime Control Act of 1970), Title IV, § 401(a) effective October 15, 1970, and made inapplicable the two-witness and direct evidence rules which had been in effect with respect to the general perjury statute, 18 U.S.C. § 1621. See *United States v. Clizer,* 464 F.2d 121, 123 (9 Cir. 1972).

tion. It was. obviously "material" under § 1623.

AFFIRMED.