Miguel Caridad, Asst. Federal Public Defender, Miami, Fla., for defendant–appellant.

Leon B. Kellner, U.S. Atty., Susan Tarbe, Linda C. Hertz, Allan B. Kaiser, Asst. U.S. Attys., Miami, Fla., for plaintiff–appellee.

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Vilma Allison OLMEDA,
Defendant–Appellant.**

No. 87–5107.

United States Court of Appeals,
Eleventh Circuit.

March 14, 1988.

Before RONEY, Chief Judge, KRAVITCH, Circuit Judge, and HENDERSON, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

Appellant Vilma Olmeda was convicted of making false declarations before a grand jury in violation of 18 U.S.C. § 1623. Prior to trial, Olmeda moved to suppress the statements she had made before the grand jury. She claimed that her fifth amendment rights had been violated at the grand jury proceeding when, after she had requested an attorney, the prosecutor continued to question her and failed to appoint an attorney for her. On appeal, Olmeda challenges the district court's denial of her motion to suppress. We affirm.

### I.

As Robert Aldana was driving away from his residence on the morning of December 20, 1985, another automobile intercepted him. He was forced at gunpoint

from his car, blindfolded, and placed in the rear of a van. His abductors drove him to an apartment at 1560 West 42nd Street in Hialeah, Florida, where they held him captive while they attempted to extort a ransom from his father. When it became clear that no ransom was forthcoming, the kidnappers released Aldana at 11:45 p.m. on the same day.

Agents of the Federal Bureau of Investigation (FBI) traced the extortionate telephone calls to the 42nd Street apartment in Hialeah. On the day after the kidnapping, FBI agents observed appellant Olmeda at the apartment in question, as well as at a shopping center accompanying the alleged kidnappers in the disposal of Aldana's car.

On January 3, 1986, Olmeda was subpoenaed before the grand jury investigating Aldana's kidnapping. At the time of her appearance, one of the alleged kidnappers had been indicted; two other persons subsequently were indicted.[1] Although Olmeda never was charged with a substantive offense relating to the kidnapping, she was charged with perjury on the basis of her grand jury testimony that she had not been at the site of the kidnapping on December 21.

When Olmeda appeared before the grand jury, the Assistant United States Attorney conducting the questioning advised her that she had the right not to answer any question if the answer to such question would tend to incriminate her, that anything she said could be used against her in any legal proceeding, that if she had an attorney the grand jury would allow her a reasonable opportunity to consult with that attorney, and that she was not at that point a target of the grand jury investigation, although she could become one in the future. When the prosecutor asked her if she had any questions about her rights, appellant asked, "If I want to talk to an attorney, is there an attorney I can talk to out there, would they give me one or—" at which point the prosecutor told her, "Ma'am, I really don't know. I mean, that's up to you." After a few more exchanges, the prosecutor stated, "Okay.

My question to you is: Do you want to talk to an attorney and not answer questions, or do you want to go ahead and answer questions before this Grand Jury? That choice is yours, Miss." Olmeda responded, "Well, I would—I would like—I would answer the questions, but, then, at the same time, there's a question I have, you know, a question that you give me that I have a question to ask, I'd like to maybe be able to step outside and talk to someone about it." The prosecutor told her that the grand jury had no attorney to give her, and asked, given that situation, if she was willing to answer questions, to which Olmeda replied, "Fine." Subsequently, Olmeda gave the testimony for which she was convicted. When asked whether she had visited the 42nd Street apartment on Saturday, December 21, the day after the kidnapping, she responded, "No." When prodded by further questioning, she added that she was there "[a]t no time.... The only place I went—I went and put $5 of gas in the car, came back home and later on that day, about 11–12 o'clock, we went to the bar." These statements provided the basis for her indictment and conviction for making false statements to a grand jury in violation of 18 U.S.C. § 1623.

## II.

Olmeda contends that her request for an attorney at the grand jury inquiry should have halted all questioning until an attorney was appointed to represent her. She compares her situation to that in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), which established that the police must stop all custodial interrogation of a suspect once that suspect requests an attorney. In *Edwards*, the suspect told the police that he wanted an attorney before making a deal with them, at which point their questioning of him ceased and he was placed in jail. The next morning, when two police detectives arrived to question him, he stated that he did not want to talk to anyone. He was told, however, that "he had" to talk, and shortly thereafter he implicated himself in the crime. The Su-

1. These three individuals pleaded guilty and were sentenced to 15 years imprisonment.

preme Court held that the use of his confession "against him at his trial violated his rights under the Fifth and Fourteenth Amendments as construed in *Miranda v. Arizona,* [384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) ]," in that "an accused has a Fifth and Fourteenth Amendment right to have counsel present during custodial interrogation." *Edwards,* 451 U.S. at 480–82, 101 S.Ct. at 1882–83.

Olmeda contends, as did the suspect in *Edwards,* that she invoked her right to consult with an attorney, and that the prosecutor's continued interrogation of her was as violative of her fifth amendment right to have counsel present during interrogation as was the police detectives' questioning of Edwards after he had requested counsel. She contends that even though the suspect in *Edwards* was in a traditional custodial setting, she was similarly under a legal disability as she was compelled by subpoena to be present before the grand jury. She points out that under the Judicial Conference guidelines [2] then in effect, the prosecutor could in fact have obtained an attorney for her, and she argues that his failure to do so violated her fifth amendment rights.

We find it unnecessary to reach appellant's argument that questioning before the grand jury provides a sufficiently coercive setting as to require the full range of *Miranda* protections.[3] We note that her contention that *Edwards* applies to the grand jury setting has not been decided by the Supreme Court. Moreover, the Court has not yet decided whether "the grand jury setting presents coercive elements which compel witnesses to incriminate themselves.... [or] whether any Fifth Amendment warnings whatever are constitutionally required for grand jury witnesses." *United States v. Washington,* 431 U.S. 181, 186, 97 S.Ct. 1814, 1818, 52 L.Ed. 2d 238 (1977).[4] In *Washington,* because the potential defendant had been fully informed of his rights under *Miranda,* including the right to appointed counsel, prior to testifying before the grand jury, the Court declined to decide whether *Miranda* warnings were constitutionally required in the grand jury setting. 431 U.S. at 190, 97 S.Ct. at 1820.

The Court has clearly decided, however, that "[t]he Fifth Amendment privilege against compulsory self-incrimination provides no protection for the commission of perjury." *United States v. Mandujano,* 425 U.S. 564, 609, 96 S.Ct. 1768, 1792, 48 L.Ed.2d 212 (1976) (Stewart, J., concurring in the judgment). Prior to being subpoenaed before a federal grand jury, Mandujano had been investigated by an agent of the Drug Enforcement Administration (DEA). The DEA agent had given Mandujano $650 to obtain some heroin, but Mandujano shortly returned the money to the agent without producing any drugs, and he failed to keep a subsequent appointment with the agent. The investigation file on Mandujano was then closed, but the DEA agent turned over the information he had obtained to federal prosecutors, who then subpoenaed Mandujano to testify before the grand jury. When called into the grand jury room, Mandujano was told that he did not have to answer any questions which would incriminate him, and that he

---

**2.** The guidelines were published in a Memorandum dated September 30, 1986 from the Administrative Office of the United States Courts.

**3.** Appellant's argument is based on the fifth amendment, not the sixth amendment right to counsel. In *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), the Court held that a person's sixth amendment right to counsel does not attach until the initiation of judicial criminal proceedings against him or her.

**4.** In *Washington,* the Court held that the testimony of a grand jury witness suspected of illegal activity could be used against him in a subsequent prosecution for a substantive criminal offense, even though the witness had not

been warned prior to giving his grand jury testimony that he was a potential defendant. The Court determined that the warnings which had been given to the defendant, including that he had the right to remain silent and that anything he said could be used against him in court, were adequate to apprise him of his right not to incriminate himself. Accordingly, given the adequacy of the warnings and the circumstances of the grand jury interview, which should have put him on notice that he was a suspect, the defendant need not additionally have been warned that he was a potential defendant. 431 U.S. at 186–90, 97 S.Ct. at 1818–20.

could be charged with perjury if he provided any false answers. The prosecutor also asked him if he had contacted an attorney, to which he responded that he had not because he could not afford one. The prosecutor replied:

> Well, if you would like to have a lawyer, he cannot be inside this room. He can only be outside. You would be free to consult with him if you so chose. Now, if during the course of this investigation, the questions that we ask you, if you feel like you would like to have a lawyer outside to talk to, let me know.

*Id.* at 567, 96 S.Ct. at 1772. At no time, however, was Mandujano informed that an attorney would be appointed for him at the government's expense if he was financially unable to retain one. *See United States v. Mandujano,* 496 F.2d 1050, 1051, n. 1 (5th Cir.1974), *rev'd,* 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976).

During the questioning Mandujano admitted that he had previously been convicted of distributing drugs, and that he had purchased heroin in the previous five months. Nevertheless, he denied knowledge of any drug dealers except for one streetcorner source and disclaimed that he either sold or attempted to sell heroin since the time of his conviction fifteen years earlier. He specifically denied having discussed the sale of heroin with anyone in the past year and said that he would not even attempt to purchase an ounce of heroin for $650.

About one month later, Mandujano was indicted for attempting to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1), 846, and for willfully making false declarations before the grand jury in violation of 18 U.S.C. § 1623. In support of a motion to suppress his grand jury testimony, he ar-

gued that as he was a "putative" defendant when he was called before the grand jury, his testimony should be suppressed because he was not given full *Miranda* warnings. Although the eight justices participating in the *Mandujano* case were unable to reach a majority decision about whether such warnings were constitutionally required, they all agreed that even if such warnings should have been given, the failure of the prosecution to provide them could not constitute a defense to a charge of perjury based upon the witness' false testimony.[5] As Justice Brennan explained, "Although the Fifth Amendment guaranteed respondent the right to refuse to answer the potentially incriminating questions put to him before the grand jury, in answering falsely, he took 'a course that the Fifth Amendment gave him no privilege to take.'" 425 U.S. at 584–85, 96 S.Ct. at 1780 (quoting *United States v. Knox,* 396 U.S. 77, 82, 90 S.Ct. 363, 366, 24 L.Ed. 2d 275, 280 (1969)).

Other cases have affirmed the principle that "perjury is not a permissible way of objecting to the government's questions." *United States v. Wong,* 431 U.S. 174, 180, 97 S.Ct. 1823, 1827, 52 L.Ed.2d 231 (1977). In *Wong,* the unanimous Court held that the defendant's failure to understand the warning of the right not to answer incriminating questions because of her limited command of English did not require suppression of her false testimony. The Court stated that even the perceived dilemma of being forced to choose between self-incrimination and lying under oath did not justify perjury, and that neither the fifth amendment nor the due process clause required suppression of the defendant's false testimony. Rather, the witness had the choice of asserting the privilege or answering the

---

5. *See also United States v. Yeager,* 537 F.2d 835 (5th Cir.1976) (per curiam) (following *Mandujano's* holding that "in a perjury prosecution a defendant may not use the privilege against self-incrimination as the basis for suppressing the very grand jury testimony that prompted the perjury charge."); *United States v. Smith,* 538 F.2d 159, 163 (7th Cir.1976) (" 'the Government's failure to give Miranda-type warnings to a grand jury witness, even one as to whom the proceedings have become accusatory, does not

bar a perjury prosecution for false testimony before the grand jury.' ") (quoting *United States v. DiGiovanni,* 397 F.2d 409, 412 (7th Cir.), *cert. denied,* 393 U.S. 924, 89 S.Ct. 256, 21 L.Ed.2d 260 (1968)) (footnote omitted).

The Eleventh Circuit, in the in banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

question truthfully. For "even if the Government could, on pain of criminal sanctions, compel an answer to its incriminating questions, a citizen is not at liberty to answer falsely." *Id.* at 180, 97 S.Ct. at 1827 (citing *United States v. Knox,* 396 U.S. 77, 82–83, 90 S.Ct. 363, 366–67, 24 L.Ed.2d 275 (1969)).

The same principle applies in this case. We need not decide whether the Constitution requires that an attorney be appointed for potential defendants who are subpoenaed to appear before a grand jury and who request to consult with an attorney about the questioning, although we agree that it is better practice, as recognized in the Judicial Conference guidelines, to provide counsel for such witnesses.[6] For even if appellant has a constitutional right to consult with an attorney during the course of the grand jury proceeding, the failure of the government to provide an attorney for her does not excuse perjury on her part. " 'Our legal system provides methods for challenging the Government's right to ask questions—lying is not one of them. A citizen may decline to answer the question, or answer it honestly, but he cannot with impunity knowingly and willfully answer with a falsehood.' " *Mandujano,* 425 U.S. at 609, 96 S.Ct. at 1792 (Stewart, J., concurring in the judgment) (quoting *Bryson v. United States,* 396 U.S. 64, 72, 90 S.Ct. 355, 369, 24 L.Ed.2d 264, 271 (1969) (footnote omitted)).

Olmeda also argues that we should exercise our supervisory power to suppress her grand jury testimony. She reasserts that the prosecutor was incorrect when he informed her that he could not appoint an attorney for her. Olmeda cites a September 30, 1986 memorandum from the Administrative Office of the United States Courts reporting that the Judicial Conference has authorized the appointment of counsel for a witness before a grand jury "when there is reason to believe that the witness could be subject to prosecution, contempt, or face loss of liberty."

Although we agree, as stated above, that it would have been better practice for the prosecutor to have obtained counsel for Olmeda pursuant to the Judicial Conference guidelines, we decline to exercise our supervisory jurisdiction to suppress her testimony in this case. Here, as in *United States v. Whitaker,* 619 F.2d 1142 (5th Cir.1980), there is no evidence that the government was using the grand jury mechanism to set a trap for Olmeda. Moreover, she was never prosecuted for any substantive offenses.[7] Accordingly, we decline to exercise our supervisory jurisdiction to suppress appellant's testimony before the grand jury. Thus, we AFFIRM the decision of the district court.

AFFIRMED.

---

6. Thus, we specifically reserve the question of whether the grand jury testimony of a witness who is later indicted for a *substantive* offense on the basis of the testimony should be suppressed if an attorney was not made available to the witness upon request.

7. *See United States v. Smith,* 538 F.2d 159, 163 (7th Cir.1976) (affirming the district court's denial of a motion to suppress the defendant's grand jury testimony, and noting that "as in *Mandujano,* the witness was not prosecuted for criminal activity on the basis of incriminating statements made before the grand jury to which Fifth and Sixth Amendment protections might be said to extend. Instead, the witness was prosecuted for committing perjury in answering the grand jury's questions.").