**STATE of Missouri, Respondent,**

v.

**Thomas UMPHFREY, Appellant.**

No. ED 88926.

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 30, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 11, 2007.

Application for Transfer to Denied
Jan. 22, 2008.

Deborah B. Wafer, Office of the Public Defender, St. Louis, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen. Karen L. Kramer, Jefferson City, MO, for respondent.

KENNETH M. ROMINES, Judge.

### Introduction

This case concerns the time of attachment of both the Fifth Amendment and Sixth Amendment rights to counsel in the context of extradition from another state. Thomas Umphfrey claims the Minnesota officers who held him in Minnesota and the Missouri detectives who interrogated him there violated both his Fifth and Sixth Amendment rights, and thus incriminating statements he made to police should have

been excluded from his murder trial. The trial court denied his motion to suppress the statements and found him guilty of first degree murder, § 565.020 RSMo (2000), and armed criminal action, § 571.015 RSMo (2000). The court sentenced Umphfrey to concurrent terms of life without parole and life, respectively. Umphfrey appeals this judgment, claiming that the court clearly erred in denying his motion to suppress. We affirm.

### Factual and Procedural Background

On 5 November 1998, Gerry Eichschlag, a co-worker of Umphfrey's, went missing. Eichschlag worked as a production supervisor at CJ Zone Manufacturing in the City of St. Louis, and he worked the early shift, from 7:00 a.m. to 3:00 p.m. He left for work that morning as usual, but he never clocked in. One employee saw Eichschlag's truck in the parking lot, and then saw it drive away early in the morning before the plant opened. By 11:00 a.m., Eichschlag's wife was aware he had not reported for work and she had not been able to locate him. She decided to call the police at that point. Umphfrey, who worked the early shift with Eichschlag, arrived late for work that day. A coworker reported that it appeared he had been up all night.

The next day, 6 November 1998, police found Eichschlag's truck in the parking lot of CJ Zone, where it was normally parked on the days he worked. St. Louis Homicide became involved with the investigation shortly thereafter because there were some credit cards missing from Eichschlag's wallet, which was in the truck. Police also found his paycheck in the truck, which appeared to have been fraudulently endorsed. After speaking with several CJ Zone employees and learning that Umphfrey and Eichschlag had been involved in at least one altercation in the past, the police placed a wanted for Umphfrey in the National Crime Information Center network.

On 12 November 1998, a Canada Citizenship and Immigration worker at the Pigeon River/Grand Portage Port of entry stopped a white Buick Skylark seeking to enter Canada. There were two women in the front of the car. The customs officer was about to let them pass into Canada, when he saw movement in the backseat and discovered Umphfrey hidden behind some bags of clothes. The officer then checked the license plate and the VIN and found that the license plate did not match the car. He denied them access to Canada and sent them back to be inspected by Minnesota police.

After some inspection, the Minnesota police arrested Umphfrey and the other two passengers for possession of a stolen vehicle. Later, they learned that Umphfrey was wanted for murder in Missouri.

On 13 November 1998, the county prosecutor in Minnesota filed a complaint listing Minnesota extradition statutes. The prosecutor listed as probable cause for the complaint the fact that Umphfrey was wanted in Missouri for murder. Following that, Judge Ken Sandvik conducted an arraignment on the extradition charge. At the arraignment, Judge Sandvik asked Umphfrey if he would like the court to appoint him a lawyer to "assist [him] in this matter." Umphfrey stated that he would, and the judge gave Umphfrey the phone number of the attorney he had appointed, Steven Coz.

After the arraignment, Umphfrey returned to jail. According to Umphfrey, he asked if he could call his attorney, and the deputy told him that he could not until he spoke with some other officers. Sometime later that evening, two detectives from St. Louis arrived to speak with Umphfrey. When they met with him, they first read

him his *Miranda* rights, which Umphfrey waived. Then the detectives proceeded to question Umphfrey about Eichschlag. Umphfrey told him that at work the day Eichschlag had gone missing, he and Eichschlag got into an argument about their work, and Eichschlag asked Umphfrey to go outside. Umphfrey said that a physical altercation began, with Eichschlag striking the first blow. Umphfrey then told the detectives that he shot Eichschlag and then buried his body near a lean-to behind the plant where they worked. Umphfrey drew a diagram to the place the body was buried. After this, Umphfrey agreed to make a recorded statement that was substantively similar to what he had already told the detectives. He also initialed and signed a *Miranda* waiver form.

The detectives relayed the information concerning the location of Eichschlag's body to the police in St. Louis, who followed the diagram to the lean-to. After some difficulty due to dense underbrush and debris in the area, they eventually found Eichschlag's body. The autopsy showed the cause of death was a gunshot wound to the head.

Umphfrey was first extradited to Illinois, and then to Missouri, where he waived his right to a jury trial. He filed a pretrial motion to suppress the introduction of the statements he had made to the St. Louis detectives, arguing that they violated his rights to counsel and due process of law under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. The trial court denied this motion and at the end of the trial found him guilty of first degree murder and armed criminal action.

Umphfrey raises three arguments in his sole point on appeal concerning his right to counsel. The first is that his Sixth Amendment right attached at the extradition hearing when he asked for appointed counsel, and therefore any attempt to question him without a lawyer present was in violation of that right. The second argument Umphfrey makes is that his Fifth Amendment right attached when he requested to call his attorney upon returning to jail from the extradition hearing, thus rendering any questioning after that point violative of his Fifth Amendment right to counsel. Umphfrey's third argument is that his Fourteenth Amendment right to due process of law was violated because the statements he made to the police were coerced. He then argues that his motion to suppress should have been granted, and if it had, the court would not have had sufficient evidence to sustain his conviction.

### Standard of Review

We review a trial court's ruling on a motion to suppress for support by substantial evidence, and we will reverse only if the ruling is clearly erroneous. *State v. Johnson*, 207 S.W.3d 24, 44 (Mo. banc 2006). We view the evidence in the light most favorable to the trial court's ruling, giving deference to the trial court's determinations of credibility. *Id.* However, we review questions of law *de novo*. *State v. Werner*, 9 S.W.3d 590, 595 (Mo. banc 2000). *See also State v. Washington*, 9 S.W.3d 671, 675 (Mo.App.E.D.1999) (whether the Sixth Amendment has been violated is a question of law, reviewed *de novo* ).

### Discussion

#### Sixth Amendment Right to Counsel

The Sixth Amendment right to counsel attaches "at or after the time that adversary judicial proceeding[s] have been initiated against a person." *State v. Washington*, 9 S.W.3d 671, 675 (Mo.App.E.D. 1999). The initiation of adversary judicial proceedings can occur "by way of formal

charge, preliminary hearing, indictment, information, or arraignment." *Id.; Fellers v. United States,* 540 U.S. 519, 523, 124 S.Ct. 1019, 157 L.Ed.2d 1016 (2004). An "adversarial judicial proceeding" is one where "the accused is confronted, just as at trial, by the procedural system, or by his expert adversary, or by both in a situation where the results of the confrontation might well settle the accused's fate and reduce the trial itself to a mere formality." *United States v. Gouveia,* 467 U.S. 180, 189, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984) (internal quotation and citation omitted). "The right to counsel attaches in the critical stages in the criminal justice process when the state commits to prosecuting its case." *Maine v. Moulton,* 474 U.S. 159, 170, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985) (internal quotations omitted). Once an accused invokes the right, any "subsequent waiver during a police-initiated custodial interview is invalid." *Washington,* 9 S.W.3d at 675. The Sixth Amendment right is offense-specific. *Id.* Thus, there are two steps to the attachment of the Sixth Amendment right to counsel: the initiation of adversary judicial proceedings, and invocation of the right by the accused.

We first turn to the question of whether the extradition proceeding in Minnesota constituted the initiation of adversary judicial proceedings. In this case, Missouri filed a fugitive complaint in Minnesota. The Minnesota court then held an "extradition arraignment." Umphfrey focuses on the word "arraignment," arguing that because an arraignment typically signifies the initiation of

adversary proceedings and the attachment of the Sixth Amendment right to counsel, this extradition arraignment qualifies. The State argues that a closer look at the extradition proceeding itself shows that it was not substantively an arraignment and therefore did not signify the initiation of adversary judicial proceedings.

The State is correct. The record shows that at this extradition arraignment, the judge did not formally read the underlying criminal charges to Umphfrey, nor did Umphfrey make any plea; both of which are typical of an arraignment.[1] The sole purpose of the hearing was to inform Umphfrey of the pending extradition request and allow him a chance to contest extradition. In fact, the State points out that Missouri had not even filed a criminal complaint at the time of the extradition arraignment. Other courts have found that similar procedures do not constitute the initiation of adversary judicial proceedings. *See, e.g., Anderson v. Alameida,* 397 F.3d 1175, 1180 (9th Cir.2005); *United States v. Yousef,* 327 F.3d 56, 142 n. 66 (in foreign extradition context); *Chewning v. Rogerson,* 29 F.3d 418, 421–22 (8th Cir. 1994) (citing cases; noting that extradition hearing, without the filing of state criminal charges, would not have triggered right). This hearing, although called an "arraignment" by Minnesota, neither committed the prosecutor to prosecute nor constituted an arraignment under Missouri's definition of the term found in Rule 24.01. We cannot conclude that this procedure constituted the initiation of adversarial judicial proceedings.[2]

---

1. Missouri Supreme Court Rule 24.01 states that an "[a]rraignment shall be conducted in open court and shall consist of reading the indictment or information to the defendant or stating to him the substance of the charge and calling on him to plead thereto." (2002).

2. Umphfrey relies heavily on the case of *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). In that case, Escobedo was not yet formally charged, but made a confession after intense interrogation and repeated refusals of his requests for an attorney. The Court found that although he had not been formally charged, the Sixth Amendment

Because we find that the Sixth Amendment right to counsel did not attach at Umphfrey's extradition hearing in Minnesota, whether he invoked that right when he asked for appointed counsel or not is irrelevant. His subsequent waivers of his right to counsel were not rendered invalid under the Sixth Amendment. The trial court did not clearly err in denying Umphfrey's motion to suppress on this basis.

### Fifth Amendment Right to Counsel

■■■■ Umphfrey also argues that his waivers were invalid under the Fifth Amendment right to counsel. In *Miranda v. Arizona*, the Supreme Court held that before any custodial interrogation, police must advise a person of, among other things, his right to have counsel present during the interrogation. 384 U.S. at 444, 86 S.Ct. 1602. The Court also held that if the person at any point indicates that he wishes to speak with an attorney, the questioning must cease until he has had a chance to do so. *Id.* at 444–45, 86 S.Ct. 1602; *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). The accused may also reinitiate questioning on his own and waive his right to counsel for that interrogation. *Edwards*, 451 U.S. at 484–85, 101 S.Ct. 1880. If he has done neither of those things, then the questioning violates his Fifth Amendment right to counsel. *McNeil v. Wisconsin*, 501 U.S. 171, 176–77, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). This rule is not offense-specific. *Id.* at 177, 111 S.Ct. 2204. Triggering the rule "requires, at a minimum, some statement that can reasonably be construed to be expression of a desire for assistance of an attorney in dealing with custodial interrogation by the police." *Id.* at 178, 111 S.Ct. 2204. Also, the person must invoke his right to counsel in the context of a "custodial interrogation," either ongoing or impending. *Id.* at 178–79, 111 S.Ct. 2204. He cannot invoke the right anticipatorily outside of this context. *Id.* at 182 n. 3, 111 S.Ct. 2204.

Whether Umphfrey invoked his right in the context of an interrogation is the issue here. It is not disputed that he was in custody. Umphfrey asked to call his newly-appointed lawyer upon returning to jail from court. The judge had told him that the lawyer was to represent him for the matter of extradition. Umphfrey's request does not indicate a desire for an attorney in the context of questioning, but appears to be what followed from the fact that the judge gave him Mr. Coz's phone number. From the record, there is no reason that Umphfrey should have anticipated further questioning upon returning from court. Therefore, any subsequent initiation of questioning by the police was not a violation of Umphfrey's Fifth Amendment right to counsel. Furthermore, he waived his *Miranda* rights before each subsequent interrogation. Thus, the trial court did not clearly err in denying Umphfrey's motion to suppress on this basis.

### Fourteenth Amendment Right to Due Process of Law

■■■■ Umphfrey bases this argument on the holding that a confession must be voluntary in order to comport with due process. *See Jackson v. Denno*, 378 U.S.

right to counsel had attached. *Id.* at 485–87, 84 S.Ct. 1758. However, the Court's analysis was dependant on the fact that the officers did not read Escobedo his rights, and they did not allow him to speak with an attorney when he asked for one. Thus, this case has later been characterized as a Fifth Amendment case, and has been narrowed for precedential purposes to its own facts. *See United States v. Gouveia*, 467 U.S. 180, 188 n. 5, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984); *DeAngelo v. Wainwright*, 781 F.2d 1516, 1519 (11th Cir. 1986).

368, 376, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). "The test for 'voluntariness' is whether the totality of the circumstances deprived defendant of a free choice to admit, to deny, or to refuse to answer, and whether physical or psychological coercion was of such a degree that defendant's will was overborne at the time he confessed." *State v. Lytle*, 715 S.W.2d 910, 915 (Mo. 1986).

Umphfrey argues that his statements were coerced because after he asked to call his attorney, the deputy told him Umphfrey could not do so until he spoke with the detectives from out of town. The only testimony to the deputy's statement is Umphfrey's own, and the trial judge made no finding that this statement was actually made. Furthermore, the detectives allowed Umphfrey to speak with his friend alone before questioning, and they gave him his *Miranda* warnings before they interrogated him. The trial court also noted that Umphfrey is not a neophyte to the criminal justice system. We do not see error in the court's refusal to suppress the statements on the basis that they were involuntary.

Point denied.

### Conclusion

The Sixth Amendment's right to counsel does not attach until the initiation of adversary judicial proceedings. Umphfrey's extradition arraignment does not qualify because the sole purpose of that proceeding was to inform him of the extradition request, and no criminal charges had been filed in Missouri at that time. The detectives did not violate Umphfrey's Fifth Amendment right to counsel because Umphfrey did not invoke the right by asking to call his attorney when there was no imminent custodial interrogation. Therefore, his subsequent *Miranda* waivers were valid. Finally, there is substantial evidence supporting the conclusion that Umphfrey's statements were not coerced. Therefore, the trial court did not clearly err in denying his motion to suppress.

AFFIRMED.

KATHIANNE KNAUP CRANE, P.J., and ROBERT G. DOWD, Jr., J., concur.