

# In the Missouri Court of Appeals
# Eastern District

## DIVISION III

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED99261 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Monroe County |
| vs. | ) | |
| | ) | Honorable Rachel Bringer Shepherd |
| BRENDA CHURCHILL, | ) | |
| | ) | |
| Appellant. | ) | FILED: March 4, 2014 |

### Introduction

Brenda Churchill ("Churchill") appeals from the judgment of the trial court following a

bench trial in which Churchill was convicted of perjury. Churchill was charged with the class D

felony of perjury for false testimony she gave under oath during a protective custody hearing

before the Juvenile Division of the Monroe County Circuit Court ("juvenile court"). The trial

court found Churchill guilty of perjury and sentenced her to four years' imprisonment. On

appeal, Churchill asserts that her perjurious testimony in the juvenile court proceeding should

have been suppressed in her criminal trial because such testimony was obtained in violation of

her constitutional and statutory rights to counsel and her constitutional right against self-

incrimination. Churchill also alleges that insufficient evidence exists to support her conviction

1

because her false statements were not material, and because she effectively retracted the statements during the course of the juvenile court proceeding.

Although the trial court violated Churchill's right to counsel under Missouri statute, lying under oath is not a permissible response to such violation. Because the violation of Churchill's statutory right to counsel does not immunize her false testimony from prosecution for perjury, the trial court did not commit error in denying Churchill's motion to suppress her juvenile court testimony. Churchill's juvenile court testimony provides sufficient evidence to support the judgment of the trial court. Accordingly, we affirm.

Factual and Procedural History

Viewed in the light most favorable to the verdict, the evidence adduced at trial is as follows. On June 9, 2011, Churchill was served with a summons ordering her to appear at a protective custody hearing on June 10, 2011, before Judge Michael Wilson ("Judge Wilson") of the juvenile court. The purpose of the hearing was to establish the identity and location of a child, known as Christian Churchill, believed to be Churchill's son, and to further determine whether the child was in need of protection from the court. The summons instructed Churchill to bring the child to the hearing.

Churchill appeared at the protective custody hearing alone. Counsel for the Juvenile Office called Churchill's daughter, Trista Churchill ("Trista") and Churchill's father, Marvin McSparren ("McSparren"), to testify about the child in question. Trista testified that she knew of a child named Christian Churchill, and that she understood the boy was Churchill's son. Similarly, McSparren testified that he knew of a child named Christian Churchill, who he understood to be Churchill's son. McSparren further testified that Churchill told him Christian

2

Churchill was her son, and that he had last seen Christian in Churchill's home about month before the hearing.

Churchill was next called to the stand and sworn in as a witness. Once on the stand, Churchill immediately requested legal counsel. The juvenile court informed Churchill that although she had a right to counsel, the court was going to proceed with the protective custody hearing and that counsel for the Juvenile Office was free to ask Churchill questions. Churchill repeated her request for an attorney at various times throughout the hearing. Counsel for the Juvenile Office examined Churchill about the child in question. In response to said questioning, and without being provided an opportunity to contact legal counsel, Churchill denied that she had a child living with her in her home. She also denied giving birth to any children since her parental rights to her youngest child were terminated. Churchill acknowledged that the summons directed her to bring the child in question to the hearing, but she testified that she could not "produce a child that I don't have."

At the end of the hearing, the juvenile court renewed its order for Churchill to produce any children living in her home. Churchill again told the juvenile court that she could not comply with the order because she had no children. The juvenile court warned Churchill that if there was a child in her home, she could be held in contempt of court and prosecuted for perjury. Churchill confirmed that she understood these consequences.

On June 27, 2011, Churchill brought her son, whose legal name is Joshua Churchill, to an arranged meeting at the juvenile offices in Boone County. Thereafter, the State charged Churchill with the class D felony of perjury for denying the existence of her son while under oath at the protective custody hearing. Before trial, Churchill moved to suppress her juvenile court testimony on the ground that the testimony was given in violation of her right to counsel.

3

The trial court denied her motion, and the matter was tried in a bench trial on July 5, 2012. Churchill moved for judgment of acquittal at the close of the State's evidence and at the close of all evidence. Both motions were denied. The trial court convicted Churchill of perjury and sentenced her to four years in the Missouri Department of Corrections. This appeal follows.

## Points on Appeal

In her first point on appeal, Churchill alleges that the trial court erred when it denied her motion to suppress and admitted her juvenile court testimony into evidence. Churchill argues her testimony should have been suppressed because it was obtained in violation of her constitutional right to counsel under the Sixth Amendment and Sections 10 and 18 of the Missouri Constitution, her statutory right to counsel under Section 211.211,[1] and her Fifth Amendment right against self-incrimination. In her second point on appeal, Churchill asserts that the trial court erred in overruling her motions for judgment of acquittal because the State failed to present sufficient evidence that her perjurious testimony was material and because Churchill later retracted her false statements.

## Standard of Review

Our review of a trial court's ruling on a motion to suppress is limited to determining whether the evidence is sufficient to support the trial court's decision. State v. Umphfrey, 242 S.W.3d 437, 441 (Mo. App. E.D. 2007). We will reverse only if the ruling is clearly erroneous. Id. We view the evidence in the light most favorable to the trial court's ruling, giving deference to the trial court's factual findings and credibility determinations. Id. However, we review questions of law *de novo*. Statutory interpretation is an issue of law that this Court reviews *de novo*. State ex rel. Wolfrum v. Wiesman, 225 S.W.3d 409, 411 (Mo. banc 2007).

---

[1] All statutory references are to RSMo 2000.

4

In reviewing the sufficiency of evidence in a court-tried case, we are limited to determining whether the state presented sufficient evidence from which a reasonable trier of fact could have found the defendant guilty. State v. Vandevere, 175 S.W.3d 107, 108 (Mo. banc 2005). We view all evidence and reasonable inferences therefrom in the light most favorable to the verdict, ignoring all contrary evidence and inferences. Id.

Discussion

**I.      The trial court did not err in admitting Churchill's juvenile court testimony into evidence.**

Churchill's first point on appeal challenges the admission of her juvenile court testimony on both constitutional and statutory grounds. Specifically, Churchill maintains that her juvenile court testimony was procured in violation of her right to counsel under the Sixth Amendment to the United States Constitution, Sections 10 and 18 of the Missouri Constitution, Section 211.211, and Missouri Supreme Court Rules 115.01 and 123.05.[2] Churchill also contends that the statements should have been suppressed because they were obtained in violation of her Fifth Amendment right against self-incrimination.

A.      Constitutional Right to Counsel

Churchill first asserts that her perjurious testimony should have been suppressed because it was obtained in violation of her constitutional right to counsel. In response, the State contends that only criminal defendants enjoy a constitutional right to counsel, and the juvenile court hearing at which Churchill appeared and perjured herself was not a criminal proceeding.

The Sixth Amendment provides, in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. This mandate is paralleled by section 18(a) of the Missouri Constitution,

---

[2] All rule references are to Mo. Sup. Ct. R. (2009), unless otherwise indicated.

5

which provides that "in criminal prosecutions the accused shall have the right to appear and defend, in person and by counsel. . . ." MO. CONST. art. 1, sec. 18(a) (emphasis added). The Sixth Amendment right to counsel applies in state proceedings by virtue of the Due Process Clause of the Fourteenth Amendment. Gideon v. Wainwright, 372 U.S. 335, 344–45 (1963). As an aspect of due process, the right to counsel turns not on whether a proceeding may be characterized as "criminal" or "civil," but on whether the proceeding may result in a deprivation of liberty. State ex rel. Family Support Div.-Child Support Enforcement v. Lane, 313 S.W.3d 182, 186 (Mo. App. W.D. 2010); see also Lassiter v. Dep't of Soc. Sevs. of Durham County, N.C., 452 U.S. 18, 25 (1981) (explaining that the right to counsel attaches only where an individual "may lose his physical liberty if he loses the litigation"). Attachment of the right to counsel occurs when adversary judicial proceeding have been initiated against a person, by way of formal charge, preliminary hearing, indictment, information, or arraignment. State v. Washington, 9 S.W.3d 671, 675 (Mo. App. E.D. 1999).

Here, Churchill was summoned to appear at a protective custody hearing as the presumed parent of Joshua Churchill (then known as Christian Churchill) pursuant to Section 211.032 of the juvenile code.[3] The juvenile code is not intended to punish individuals for criminal conduct, but is "to facilitate the care, protection and discipline of children who come within the jurisdiction of the juvenile court." Section 211.011. As such, proceedings under the juvenile code are civil, not criminal in nature. J. D. H. v. Juvenile Court of St. Louis Cnty., 508 S.W.2d 497, 500 (Mo. banc 1974). By appearing and testifying at the protective custody hearing, Churchill was not subject to criminal prosecution, nor was she in any way at risk of losing her

---

[3] This section gives the juvenile court authority to hold a protective custody hearing upon motion from any party when a child is "alleged to be in need of care and treatment because . . . the parents . . . neglect or refuse to provide proper support . . . or other care necessary for [the child's] well-being." Section 211.031.1(1)(a).

6

physical liberty.[4] The purpose of the protective custody hearing was neither to adjudicate Churchill's rights nor to determine whether she was guilty of any offense. Rather, Churchill was summoned to appear at the protective custody hearing so that the juvenile court could determine whether Churchill was the parent of the child in question, and, if so, where the child was located. The fact that Churchill was later prosecuted for the giving of false testimony at the protective custody hearing does not affect whether Churchill was constitutionally entitled to counsel **at the time she gave the false testimony** because the right to counsel only attaches once adversary judicial criminal proceedings have been initiated. See Washington, 9 S.W.3d at 675.

Accordingly, because the protective custody hearing was a civil proceeding that did not put Churchill's physical liberty in jeopardy, she had no constitutional right to counsel at the hearing.

B.      Statutory Right to Counsel

Having determined that Churchill enjoyed no constitutional right to counsel at the protective custody proceeding, we now address whether she was denied her right to counsel at such hearing under Section 211.111 and the related Missouri Supreme Court Rule 115.01. Finding no authority directly on point, we treat this matter as a case of first impression.

To determine whether Churchill was entitled to counsel under Section 211.211, we must interpret and apply the juvenile code, Chapter 211 RSMo. "The primary rule of statutory interpretation is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words in their plain and ordinary meaning." State v. McLaughlin, 265 S.W.3d 257, 267 (Mo. banc 2008) (internal quotations omitted). In

---

[4] We contrast Churchill's circumstances with that of an individual not accused of a crime but nevertheless at risk of losing her liberty. For example, where an individual is accused of indirect contempt, the trial judge must predetermine whether the nature of the infraction is of sufficient gravity to warrant the imposition of imprisonment if the accused is found guilty and, if so, advise the accused of her right to counsel and provide an adequate opportunity for her to obtain representation. Hunt v. Moreland, 697 S.W.2d 326, 330 (Mo. App. E.D. 1985).

7

determining the intent and meaning of statutory language, the words must be considered in context, and similar sections must be considered in order to arrive at the true meaning of the statute. S. Metro. Fire Prot. Dist. v. City of Lee's Summit, 278 S.W.3d 659, 666 (Mo. banc 2009).

We are also guided by the legislature's instruction that Chapter 211 "shall be liberally construed . . . to the end that each child coming within the jurisdiction of the juvenile court shall receive such care, guidance and control as will conduce to the child's welfare and the best interests of the state . . .," as well as the stated purpose of Chapter 211, which is "to facilitate the care, protection and discipline of children who come within the jurisdiction of the juvenile court." Section 211.011.

Section 211.211.1 plainly states that "[a] party is entitled to be represented by counsel in all proceedings." Section 211.211.6 further specifies that "[c]ounsel shall serve for all stages of the proceedings . . . unless relieved by the court for good cause shown." Rule 115.01(a) mirrors the language of Section 211.211 and also provides that "[a] party is entitled to be represented by counsel in all proceedings."

We find the language of Section 211.211 clear and unambiguous. The statute grants an unconditional right to counsel to any party to a juvenile court proceeding and for all stages of the proceeding. The express language of the statute places no limitation on a party's right to counsel and we are aware of no judicial decision limiting the right to counsel provided by the legislature in Section 211.211. When considering the words used in Section 211.211, and giving the words their plain and ordinary meaning, the only reasonable interpretation of the statute is that the legislature granted Churchill, as a party to the protective custody hearing, an absolute right to counsel. Consistent with this statutorily granted right, Rule 123.05 further clarifies the right to

counsel in protective custody hearings.[5]  Notably, subsection (d) of Rule 123.05 provides that "[a]t the protective custody hearing, the court shall inform the juvenile's parents, guardian or custodian of the right to counsel, including the right to appointed counsel pursuant to Rule 115.03."  As a party to the protective custody hearing, Churchill was entitled to advice of counsel.  The record clearly shows that Churchill invoked her right to counsel prior to testifying, but was forced by the trial court to testify before she was allowed to consult with an attorney.  Given the specific facts before us, we agree that the manner in which the juvenile court handled Churchill's request for counsel violated her right to counsel under Section 211.211.

However, our analysis of Churchill's point on appeal does not end with a finding that she was denied her right to counsel provided under Section 211.211 and Rule 123.05.  We must now consider whether suppression of Churchill's juvenile court testimony in her perjury trial is mandated as a result of the violation of her statutory right to counsel.  We hold that it is not.

As stated above, we treat this matter as a case of first impression.  We find no Missouri cases addressing the suppression issue presented by Churchill in this appeal.  Churchill reasons that the violation of her right to counsel at the juvenile hearing mandates the suppression of any testimony she gave after invoking her statutory right to counsel, even if such testimony is false and perjurious.  Given the well-established federal case law rejecting this argument in connection with alleged violations of a defendant's constitutional rights, we soundly reject Churchill's argument.

Almost 40 years ago the U.S. Supreme Court categorically rejected the notion that a person was protected from prosecution for perjury through suppression of evidence where the perjurer complained that the government exceeded its constitutional powers in making the

---

[5] Section 211.032 authorizes the Missouri Supreme Court to promulgate rules for the implementation of mandatory court proceedings under Section 211.031(1), which includes the protective custody hearing at issue here.

9

inquiry that produced the perjurious testimony. United States v. Mandujano, 425 U.S. 564, 576-77 (1976). Although Mandujano involved a motion to suppress testimony taken before a grand jury, this factual distinction is inconsequential to the underlying issue of whether perjurious testimony is inadmissible when obtained in violation of a defendant's constitutional rights. A year later, the Supreme Court reaffirmed its holding in Mandujano in United States v. Wong, 431 U.S. 174, 178 (1977), holding that a violation of a person's Fifth Amendment privilege does not protect that person from prosecution for perjury. Since Mandujano and Wong, other federal courts have similarly concluded that violation of a defendant's constitutional rights guaranteed by the Fifth and Sixth Amendments does not require exclusion of the defendant's false testimony in a subsequent prosecution for perjury. See, e.g., United States v. Kennedy, 372 F.3d 686, 688 (4th Cir. 2004) ("[the defendant's] remedy for any Fifth or Sixth Amendment violations does not encompass exclusion of his false testimony from his perjury trial. Courts cannot condone perjury as a self-help remedy against constitutional violations."). We find the reasoning of the U.S. Supreme Court and other federal courts that a defendant cannot immunize acts of perjury when the false statements were obtained in violation of a defendant's constitutional rights instructive.[6]

Churchill testified at the hearing without advice of counsel despite her repeated requests for counsel. This Court does not condone the denial of Churchill's right to counsel under Section 211.211 and Rule 123.05. However, the suppression of the perjurious testimony obtained following the violation of that right is simply not a remedy available to Churchill. As noted by the U.S. Supreme Court in Mandujano, "[I]t cannot be thought that as a general

---

[6] Although the seminal case of United States v. Mandujano addressed only the violation of a defendant's rights under the Fifth Amendment right against self-incrimination, the reasoning of the Supreme Court's holding is not limited to violations of the Fifth Amendment, but equally applies to violations of a defendant's Sixth Amendment right to counsel. See id.

10

principle of our law a citizen has the privilege to answer fraudulently a question that the Government should not have asked. Our legal system provides methods for challenging the Government's right to ask questions -- lying is not one of them." 425 U.S. at 577 (quoting United States v. Knox, 396 U.S. 77 (1969)).

"The distinction between rights and remedies, a classic feature of our legal system, is particularly important in the context of the procedural rights afforded to criminal defendants. The sweep of exclusionary rules is far from absolute, as courts have found illegally obtained evidence to be admissible for some purposes." Kennedy, 372 F.3d at 693. The federal courts have consistently held that perjury is not a permissible way of objecting to government questioning that violates an individual's constitutional rights. Wong, 431 U.S. at 180. We reject the argument that Churchill is entitled to suppression of her perjurious testimony as a result of the violation of her statutory right to counsel when suppression would not be an available remedy for a violation of her rights under the Fifth and Sixth Amendments to the U.S. Constitution.

C.     Right Against Self-Incrimination

Churchill next contends that her juvenile court testimony should have been suppressed because it was obtained in violation of her Fifth Amendment right against self-incrimination. Specifically, Churchill contends that her perjurious testimony was unconstitutionally compelled because she was not advised of her Fifth Amendment right not to incriminate herself. Even if Churchill's constitutional right against self-incrimination were applied to the facts of this case (which we do not decide), we reject her argument that a violation of that right requires suppression of her juvenile court testimony. As noted in the discussion above, this argument has been expressly rejected by the U.S. Supreme Court in Mandujano and its progeny.

11

The trial court did not err in failing to suppress Churchill's testimony from the protective custody hearing and admitting the testimony into evidence at her trial for perjury. Point One is denied.

**II.     The judgment of the trial court is supported by sufficient evidence.**

Having determined that the trial court properly admitted Churchill's juvenile court testimony into evidence, we now consider Churchill's second point on appeal which addresses whether her conviction for perjury was supported by sufficient evidence.

Churchill first argues that her testimony, even if false, was not sufficiently material to support a conviction for perjury. Churchill reasons that regardless of whether the juvenile court believed or disbelieved her false testimony that she did not have a child sought by the subpoena, she eventually would have been required to relinquish custody of her son once the juvenile court issued a capias warrant for her arrest under Section 211.121. Churchill suggests that, for this reason, her false testimony did not and could not substantially affect the outcome of the protective custody proceeding and was therefore not material to the proceeding. We reject this circuitous argument.

A person commits the crime of perjury when, "with the purpose to deceive, [she] knowingly testifies falsely to any material fact upon oath or affirmation legally administered, in any official proceeding before any court, public body, notary public or other officer authorized to administer oaths." Section 575.040.1. "A fact is material, regardless of its admissibility under rules of evidence, if it could substantially affect, or did substantially affect, the course or outcome of the cause, matter or proceeding." Section 575.040.2.

At trial, Judge Wilson testified that the protective custody hearing involving Churchill "was a unique circumstance" because the court "had not established there was a child yet in need

12

of protection." Judge Wilson went on to explain that "our only two purposes in [the] hearing was [sic] to determine if there was a child and determine where that child was." Because the sole purpose of the proceeding was to determine the very existence of Churchill's son, Churchill's statements denying she had a son clearly could have substantially affected the course or outcome of the proceeding and were therefore material.

Contrary to Churchill's assertion, Section 211.121 did not require Judge Wilson to issue a capias warrant when Churchill failed to bring Joshua to the hearing. Section 211.121 reads, in full:

> If any person summoned by personal service fails without reasonable cause to appear, he may be proceeded against for contempt of court. In case the parties fail to obey the summons or, in any case when it appears to the court that the service will be ineffectual a capias *may be issued* for the parent or guardian, or for the child.

Under the plain language of Section 211.121, the issuing of a capias warrant following a party's failure to obey a summons is permissive, not mandatory. Accordingly, had Churchill maintained her deception, and not delivered her child to the juvenile officer, it is possible that the child who was the subject of the protective custody hearing could have remained in Churchill's custody indefinitely and would not have received the care and protection he needed. Without question, Churchill's false testimony could have affected the outcome of the protective custody hearing and was material to that hearing.

Churchill next asserts that her false testimony cannot support a conviction for perjury because she effectively retracted her false testimony when she later brought her son to the juvenile authorities. Arguing that retraction is a complete defense to perjury, Churchill submits the trial court erred in denying her motion for judgment of acquittal.

13

In Missouri, the defense of retraction is statutory. Under Section 575.040.4, "[i]t is a defense to a prosecution [for perjury] that the actor retracted the false statement in the course of the official proceeding in which it was made provided he did so before the falsity of the statement was exposed." Subsection five further clarifies that "[t]he defendant shall have the burden of injecting the issue of retraction . . . ." Section 575.040.5.

The record before us is void of any evidence that Churchill injected the issue of retraction either before or during her trial for perjury. Churchill did not present any witnesses at trial, and her defense counsel's closing argument was limited to a brief statement that the State failed to meet its burden of proof. Having not raised the issue of retraction at any time prior to this appeal, Churchill did not meet her burden of injecting the issue as required under Section 575.040.5 and cannot now assert error on the part of the trial court with regard to this issue.

We reject Churchill's assertions that the evidence presented was insufficient to prove that her false testimony was material or that she met her burden of proving she effectively retracted her false testimony. The judgment of the trial court is supported by sufficient evidence. Point Two is denied.

## Conclusion

The trial court did not err in failing to suppress and admitting Churchill's juvenile court testimony into evidence in her perjury trial. Such testimony constituted sufficient evidence to support the trial court's judgment. Accordingly, we affirm the judgment of the trial court.

Kurt S. Odenwald, Judge

Angela T. Quigless J., Concurs in result only.
Mary K. Hoff, P.J., Dissents in separate opinion.

14



# In the Missouri Court of Appeals
# Eastern District

### DIVISION THREE

| | |
|---|---|
| STATE OF MISSOURI, | ) No. ED99261 |
| | ) |
| Respondent, | ) Appeal from the Circuit Court of |
| | ) Monroe County |
| vs. | ) |
| | ) Honorable Rachel Bringer Shepherd |
| BRENDA CHURCHILL, | ) |
| | ) |
| Appellant. | ) Filed: March 4, 2014 |

#### DISSENT

I respectfully dissent. I conclude that because Churchill's right to counsel under Section 211.211 and Rules 115.01(a) and 123.05(d) was violated during the protective custody hearing, her testimony which resulted in the criminal perjury charges against her, should have been suppressed. I find this case distinguishable from the cases utilized by the majority. Here, after repeatedly requesting counsel, and being assured by the court she had a right to counsel, Churchill was forced to testify under oath by the judge who informed her that anything done on that day "would be a temporary matter". She was given no notice that she had a right to not testify and that anything said could be used against her later and no counsel to inform her of such. As a result, Churchill's compelled statements should have been suppressed as involuntary and as a violation of her statutory and due process rights. I would reverse the judgment of the conviction and four year sentence.

_____
Mary K. Hoff, Presiding Judge